UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X
AIOI NISSAY DOWA INSURANCE COMPANY LTD.,

Petitioner,

-v-

PROSIGHT SPECIALTY MANAGEMENT COMPANY, INC., f/k/a MUTUAL MARINE OFFICE, INC., and NEW YORK MARINE AND GENERAL INSURANCE COMPANY,

Respondents.
--------------------------------------------------------------- X

12 Civ. 3274 (JPO)

MEMORANDUM AND ORDER

J. PAUL OETKEN, District Judge:

Petitioner Aioi Nissay Dowa Insurance Company, Ltd. ("Aioi") has petitioned the Court pursuant to the 1958 Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 21 U.S.T. 2517 (the "New York Convention"), implemented by and reprinted at 9 U.S.C. §§ 201, *et seq.*, and Section 9 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 9, to confirm an arbitration award (the "Final Award") rendered on March 20, 2012 against Respondents ProSight Specialty Management Company, Inc., formerly known as Mutual Marine Office, Inc. ("ProSight") and New York Marine and General Insurance Company ("New York Marine") (collectively, the "ProSight Parties" or "Respondents"). Petitioner also requests that the Court award it its "costs of suit." (Petition to Confirm Arbitration Award, Dkt. No. 1-1 ("Petition").) Respondents do not oppose confirmation of the Final Award, but do oppose granting Petitioner the "costs of suit." Respondents have also moved separately for the Court to seal the record of this Petition, and in particular, to seal the Final Award itself, arguing that publication of the documents connected to this Petition would violate a confidentiality agreement entered into by the parties. For the reasons set forth below, the petition is granted and the Final

Award is confirmed. As the prevailing party, Petitioner is entitled to its court costs pursuant to Fed. R. Civ. P. 54(d). The motion to seal is denied.

## I. Background

### A. Facts[1]

On December 16, 1999, the ProSight Parties, which are aviation insurance companies, entered into two aviation reinsurance contracts with Aioi's predecessor, The Chiyoda Fire and Marine Insurance Co. Ltd. ("Chiyoda"). Those contracts obligated Aioi, as successor to Chiyoda, to reinsure the ProSight parties for certain percentages of covered losses, with a set maximum amount "per event" for the period January 1, 2000 through March 31, 2001. (Petition ¶ 7.) On February 13, 2001, the same parties entered into two aviation reinsurance contracts obligating Aioi to reinsure the ProSight parties for different percentages of covered losses and with different maximum coverage amounts. (*Id.* ¶ 8.) (These contracts are collectively referred to as the "Contracts.")

Each of the Contracts contains an arbitration clause, which reads in relevant part as follows:

> All disputes or differences arising out of the interpretation of this Contract shall be submitted to the decision of two arbitrators, one to be chosen by each party, and in the event of the arbitrators failing to agree, to the decision of an umpire to be chosen by the arbitrators. The arbitrators and umpire shall be executive officials chosen from the aviation insurance or reinsurance community. . . .
>
> The arbitration proceeding shall take place in New York, New York and shall be subject to the laws of the State of New York. . . . The arbitrators and umpire are relieved from all judicial formality and may abstain from following the strict rules of law. They shall settle any dispute under the Contract according to an equitable rather than a strictly legal interpretation of its terms and their decision shall be final and not subject to further appeal.

[1] The following facts are taken from Aioi's Petition to Confirm Arbitration Award (Dkt. No. 1), which is not opposed, as well as the Final Award, which was submitted to the Court by letter.

(*Id.* ¶ 10.)

The ProSight parties insured their policyholders American Airlines, United Airlines, and the Boeing Company for liabilities arising from the terrorist attack on the World Trade Center on September 11, 2001 (the "WTC Loss"), and Aioi reinsured the payments made by the ProSight parties to or on behalf of their policyholders for these losses.

The arbitration concerned issues of contract interpretation with respect to the Contracts. Specifically, the parties disputed whether the WTC Loss was a single "event," subject to one retention and one limit under each of the Contracts, or if it constituted two events, and hence was subject to two retentions and two limits under each Contract.

An arbitration panel (the "Panel") was convened, and both sides accepted the Panel as it was constituted. The Panel conducted an evidentiary hearing in New York, New York from March 13-16, 2012, at which time the Panel heard witness testimony, accepted documents into evidence, and heard argument from counsel. Following the hearing, the Panel issued the Final Award that concluded, *inter alia*, that "[b]ecause the WTC Losses occurred within one 24 hour period and within a 10 mile radius, the Panel . . . DECLARES that all such losses constitute one event" under the Contracts. (Final Award at 3.)

In connection with the arbitration, the parties entered into a confidentiality agreement under which the parties agreed that, "subject to court approval, . . . all submissions of Arbitration Information to a court shall be sealed." (Conf. at ¶ 3.) "Arbitration Information" was defined to include the "final award and any interim decisions." (*Id.* ¶ 2.) The agreement also provided that "[i]n all contexts, all parties will make good-faith efforts to limit the extent of the disclosures, if any, to be made, and will cooperate with each other in resisting or limiting disclosure of Arbitration Information." (*Id.*) The agreement also provided that the parties "recognize[d] that

serious injury could result to any party and its business if the other party breaches its obligations" under the agreement. (*Id.* ¶ 7.)

### B. Procedural History

Aioi filed the instant petition on April 25, 2012. Aioi did not include with its petition a copy of the Final Award in order to comply with the parties' confidentiality agreement. Separately, on May 1, 2012, Aioi submitted a letter to the Court that enclosed the Final Award and the parties' confidentiality agreement. That letter also stated that Aioi could not argue in good faith that the Final Award meets the Second Circuit's standard for filing a document under seal, and requested permission to amend its petition to include a copy of the Final Award.

Respondents replied by letter to the Court that Aioi's conduct violated the parties' confidentiality agreement, which required all parties to "make good-faith efforts to limit the extent of disclosures, if any, to be made" of the Arbitration Information, including of the Final Award.

On May 14, 2012, Respondents filed a motion to seal the record of the Petition to Confirm the Arbitral Award and any judgment entered thereon. (Dkt. No. 17.)

## II. Petition to Confirm

### A. Standard

There is no dispute that, because Aioi is a foreign corporation, this petition is subject to the New York Convention. *See* 9 U.S.C. § 202. Pursuant to 9 U.S.C. § 207, "[t]he court shall confirm" an award that falls under the New York Convention "unless [the court] finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." 9 U.S.C.A. § 207. "Typically, a district court's role in reviewing a foreign arbitral award arising under the Convention is 'strictly limited and the showing required to avoid summary confirmance is high.'" *Zeevi Holdings Ltd. v. Republic of Bulgaria,* No. 09 Civ. 8856,

2011 WL 1345155, at *2 (S.D.N.Y. Apr. 5, 2011) (quoting *Compagnie Noga D'Importation et ''Exportation, S.A. v. Russ. Fed'n*, 361 F.3d 676, 683 (2d Cir. 2004)).

Under the New York Convention, a court may decline to confirm an arbitral award where (1) "the parties to the arbitration agreement lacked capacity or the agreement was not legally valid"; (2) "proper notice of the appointment of the arbitrator or of the arbitration proceeding was not given"; (3) "the award deals with a matter not submitted to arbitration or beyond the scope of the submission"; (4) "the arbitral authority or procedure was not agreed to by the parties"; or (5) "the award was not yet binding or had been set aside or suspended in the enforcement forum." *In re Arbitration Between Monegasque De Reassurances S.A.M. v. Nak Naftogaz of Ukraine*, 311 F.3d 488, 494 (2d Cir. 2002) (quoting New York Convention art. V(1)). A reviewing court may also refuse enforcement of the arbitration agreement if "[t]he subject matter of the difference is not capable of settlement by arbitration," or if "recognition or enforcement of the award would be contrary to the public policy of [the forum where enforcement is sought]." *Id.* (quoting New York Convention, art. V(2)). These specified grounds for denial of enforcement are exclusive. *Id.*

Similarly, confirmation of an arbitration award under the FAA is "[n]ormally . . . a summary proceeding that merely makes what is already a final arbitration award a judgment of the court, and the court must grant the award unless the award is vacated, modified, or corrected." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) (citation and internal quotation marks omitted); s*ee also Hall St. Assocs., L.L.C. v. Mattel, Inc*., 552 U.S. 576, 582 (2008) ("Under the terms of § 9 [of the FAA], a court 'must' confirm an arbitration award 'unless' it is vacated, modified, or corrected 'as prescribed' in §§ 10 and 11."). "The arbitrator's rationale for an award need not be explained, and the award should be confirmed if a ground for the arbitrator's decision can be inferred from the facts of the case." *D.H Blair*, 462 F.3d at 110

(citation and internal quotation marks omitted). "[A] barely colorable justification for the outcome reached" is all that is necessary to confirm the award. *Landy Michaels Realty Corp. v. Local 32B-32J, Serv. Emps. Int'l Union*, 954 F.2d 794, 797 (2d Cir. 1992).

Under Section 10 of the FAA, a court may vacate an arbitration award where:

> (1) the award was procured by corruption, fraud, or undue means; (2) there was evident partiality or corruption in the arbitrators; (3) the arbitrators were guilty of misconduct in refusing to postpone the hearing or refusing to hear evidence pertinent to the controversy, or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

*Interdigital Commc'ns Corp. v. Nokia Corp.*, 407 F. Supp. 2d 522, 528 (S.D.N.Y. 2005) (citing 9 U.S.C. § 10(a)).

When a petition to confirm an arbitration award is unopposed, the Second Circuit holds that, generally, a court should treat the petition "as an unopposed motion for summary judgment," based on "the petition and accompanying record." *D.H Blair*, 462 F.3d at 109-10. Thus, as when a court rules on a summary judgment motion, the court "may not grant the [petition] without first examining the [petitioner's] submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial." *Id.* at 110.

**B. Discussion**

The record shows that there is no genuine issue of material fact that there is no basis for vacating, modifying, or correcting the Final Award and that none of the bases to refuse to confirm an award under either the New York Convention or the FAA is present. The parties both assented to the composition of the Panel, the Panel considered extensive evidence and testimony, and the Final Award is clearly based upon the evidence and the arguments of counsel

during the proceedings. No party raises any argument as to why the Final Award should not be confirmed. Therefore, the Court grants the petition and confirms the Final Award.

Petitioner also requests that the Court grant it the "costs of suit." Insofar as Petitioner is referring to the general rule under Rule 54(d)(1) of the Federal Rules of Civil Procedure that "costs—other than attorney's fees—should be allowed to the prevailing party" in a lawsuit, the request is granted. However, to the extent that Petitioner is seeking attorney's fees incurred in connection with the instant petition, the request is denied. Petitioner does not "specify the judgment and the statute, rule, or other grounds entitling" it to an award of attorney's fees, Fed. R. Civ. P. 54(d)(2), and does not identify any basis on which to depart from the default rule that "a prevailing party is ordinarily not entitled to attorneys' fees except when expressly provided by statute or contract." *In re Arbitration Between Westchester Fire Ins. Co. v. Massamont Ins. Agency, Inc.*, 420 F. Supp. 2d 223, 227 (S.D.N.Y. 2005) (noting that the FAA "contains no provision authorizing an award of attorneys' fees in confirmation actions," but allowing award of court costs pursuant to Fed. R. Civ. P. 54(d)(1)).

## III. Motion to Seal

Respondents have filed a motion to seal the record of the Petition to Confirm the Arbitral Award and any judgment entered thereon. (Dkt. No. 17.) In the alternative, Respondents argue that, at a minimum, the Final Award itself must be sealed. For the reasons stated below, this motion is denied.

The Second Circuit has explained that the public has both a common law and a "qualified First Amendment right" of access to "judicial documents" and judicial proceedings. *See Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119-20 (2d Cir. 2006) (quoting *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 91 (2d Cir. 2004)). "The presumption of access is based on the need for federal courts, although independent—indeed, particularly because they are

independent—to have a measure of accountability and for the public to have confidence in the administration of justice." *Id.* at 119 (quoting *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995)).

"The Second Circuit has articulated a three-step process for determining whether documents should be placed under seal." *Mut. Marine Office, Inc. v. Transfercom Ltd.*, No. 08 Civ. 10367, 2009 WL 1025965, at *4 (S.D.N.Y. Apr. 15, 2009).

> First, a court must determine whether the presumption of access attaches. A presumption of access attaches to any item that constitutes a "judicial document"—i.e., an "item . . . relevant to the performance of the judicial function and useful in the judicial process." Second, if the court determines that the item to be sealed is a "judicial document," the court must then determine the weight of the presumption of access. "[T]he weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." "Generally, the information will fall somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance." Finally, after determining the weight of the presumption of access, the court must "balance competing considerations against it." "Such countervailing factors include but are not limited to the danger of impairing law enforcement or judicial efficiency and the privacy interests of those resisting disclosure."

*Id.* (quoting *Lugosch*, 435 F.3d at 119, 120) (internal citations omitted). "[D]ocuments may be sealed if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to preserve that interest. Broad and general findings by the trial court, however, are not sufficient to justify closure." *Lugosch*, 435 F.3d at 120 (quoting *In re New York Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987)) (internal citations omitted). "The party seeking the sealing of judicial documents bears the burden of showing that higher values overcome the presumption of public access." *Alexandria Real Estate Equities, Inc.*

*v. Fair*, No. 11 Civ. 3694, 2011 WL 6015646, at *2 (S.D.N.Y. Nov. 30, 2011) (citing *DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 826 (2d Cir. 1997)).

It is well settled that the petition, memoranda, and other supporting documents filed in connection with a petition to confirm an arbitration award (including the Final Award itself) are "judicial documents that directly affect[] the Court's adjudication" of that petition. *See Alexandria Real Estate*, 2011 WL 6015646, at *2; *Church Ins. Co. v. Ace Property & Cas. Inc. Co.*, No. 10 Civ. 698, 2010 WL 3958791, at *3 (S.D.N.Y. Sept. 23, 2010); *Mut. Marine Office*, 2009 WL 1025965, at *5. Thus, Respondents bear the burden of showing that sealing is necessary to preserve higher values.

In support of their motion, Respondents argue that that the parties entered into a confidentiality agreement, which provided that each side recognizes that "serious injury could result to any party and its business" if information related to the arbitration was disclosed, and that both sides would make "good-faith efforts to limit the extent of disclosures" of the information. (Memorandum of Law in Support of Respondents' Motion to Seal the Record of the Proceedings to Confirm the Arbitration Award, Dkt. No. 19, at 1.) Respondents argue that Aioi's submission of the Final Award to the Court for approval and filing on the Court's docket was inconsistent with Aioi's contractual obligation. Respondents appeal to the general principle that "public policy holds competent contracting parties to bargains made by them freely and voluntarily, and requires the courts to enforce such agreements." *Rex Med. L.P. v. Angiotech Pharm. (US), Inc.*, 754 F. Supp. 2d 616, 626 (S.D.N.Y. 2010).

Respondents do not point to any specific information contained in the Final Award the disclosure of which would be harmful to any party. They simply argue that disclosure of the Final Award—which constitutes "Arbitration Information" under the parties' confidentiality agreement—is inconsistent with the parties' agreement. However, while enforcement of

contracts is undeniably an important role for a court, it does not constitute a "higher value" that would outweigh the presumption of public access to judicial documents. Courts in this District have held that "the mere existence of a confidentiality agreement covering judicial documents is insufficient to overcome the First Amendment presumption of access," *Alexandria Real Estate*, 2011 WL 6015646, at *3, and have consistently refused to seal the record of a petition to confirm an arbitration award, notwithstanding the existence of such an agreement. *See id.*; *Church Ins.*, 2010 WL 3958791, at *3; *Mut. Marine Office*, 2009 WL 1025965, at *5.

Respondents may have an action for breach of contract against Aioi for its alleged failure to adhere to its obligations under the confidentiality agreement—the Court makes no finding whatsoever on that question. However, absent evidence or argument that would enable the Court to make "specific, on the record findings . . . demonstrating that closure is essential to preserve higher values and is narrowly tailored to preserve that interest," the Court cannot grant Respondents' motion. *Lugosch*, 435 F.3d at 120.

## IV. Conclusion

For the foregoing reasons, the petition to confirm the Final Award is GRANTED, and the Court holds that Petitioner is entitled to an award of court costs pursuant to Federal Rule of Civil Procedure 54(d)(1), but not to an award of attorney's fees. Respondents' motion to seal the record of this petition (or in the alternative, the Final Award itself) (Dkt. No. 17) is DENIED. Aioi shall file a copy of the Final Award on the docket of this case within fourteen days of this Order, thereby granting the public access to the documents that support the Court's decision. Once the Final Award is filed, the Clerk of Court shall close this case.

SO ORDERED.

Dated: New York, New York
August 21, 2012

J. PAUL OETKEN
United States District Judge